## Charles E. Grosse v. Sweet, Dempster & Co.

1. VOLUNTARY ASSIGNMENTS—*Binding upon the Parties, However Fraudulent.*—It is settled by a long course of decisions in this country and in Great Britain, that however fraudulent a deed may be, as to creditors it is valid and binding between the parties to it.

2. FRAUDULENT CONVEYANCES—*To What Extent Void as to Creditors.*—A fraudulent conveyance is void only as to creditors, and then only to the extent to which it may be necessary to deal with the conveyed estate for their satisfaction. When the claims of creditors are satisfied the conveyance will be good for all other purposes.

Creditor's Bill.—Appeal from the Circuit Court of Cook County; the Hon. JOHN GIBBONS, Judge, presiding. Heard in this court at the October term, 1899. Affirmed. Opinion filed June 14, 1900.

**Statement by the Court.**—November 1, 1895, appellant, as party of the first part, and Andrew Z. Olson, of the second part, entered into an agreement, the parts of which material to be considered in this case are as follows:

" Whereas, said party of the first part is engaged in business in the line of clothing, men's hats, caps, furnishing goods, etc., in the city of Chicago, and said A. Z. Olson is now employed by said first party as salesman and general assistant; said first party agrees to employ said second party for the term of three years from this date, and in lieu of a stated salary said first party agrees with said second party that he will allow him as compensation for his services one-fourth of the profits of the business during the above term, after deducting a salary of $20 weekly to each of the two parties hereto (which amount shall be charged to expense account) under the following conditions: The business is to be carried on under the name of Charles E. Grosse, and said second party agrees to devote his entire time and attention to the successful prosecution of the said business, and neither directly not indirectly to engage in any other business during the continuance of this agreement except the business above stated. At the end of each year an inventory of the stock is to be taken at net cost price and a deduction of ten (10) per cent for depreciation in value shall be made; and after deducting the indebtedness of the business, the net profits are thus found, which have accumulated during the year, which shall be divided on the ratio of seventy-five (75) per cent of said profits to be credited to the account of said first party, and twenty-five (25) per cent to be credited to the account of said second party. The said second party shall be permitted to draw for his personal expense a sum not exceeding $20 weekly at the end of each week, which shall be charged to expense account, and the same amount shall also be drawn by said first party, which shall also be charged to the expense account. Should the said second party desire to extend credit to his friends or others in opposition to or without the consent of said first party, should said credits prove to be a loss, all such shall be charged to the account of said second party in full, and deducted from his proportion of the profits at the end of the year, and the balance, if any, found to be due him at the end of the year shall be allowed to remain in the business at the option of the first party, in which event interest at the rate of six (6) per cent shall be allowed upon such amount."

Pursuant to the terms of this agreement, Olson entered the employment of Grosse, and continued therein up to the month of April, 1897, when it is claimed by Grosse, Olson ceased to work for him without any good cause, and soon thereafter entered into the employment of a rival in trade of said Grosse.

In the year 1893 Olson contracted an indebtedness to the firm of Sweet, Dempster & Co. to the amount of $1,694, and during that year failed in business, leaving a large amount of debts unpaid, and ever since that time has been insolvent. The firm of Sweet, Dempster & Co. was succeeded in business by the appellee, a corporation of the same name, the firm assigning and transferring to the corporation all its assets, including the claim against Olson. On this claim a judgment was rendered in favor of the appellee and against Olson on April 13, 1897, for $1,694, on which execution was issued and returned *nulla bona.*

Appellee filed a creditor's bill against Olson, Grosse, and Florence M. Olson, the wife of said Andrew, which contains the usual allegations and prayer of a creditor's bill, and in addition charges in substance the making of said contract; Olson's employment thereunder; that about January 1, 1897, an accounting was had between Grosse and Olson, as the result of which there was found to be due from Grosse to Olson $1,200; that at the request of Olson, and for the purpose of avoiding the payment of Olson's debts and to hinder and delay his creditors, said amount was transferred upon the books of Grosse to the credit of said Florence M. Olson, and Grosse agreed to pay the same to her at any time thereafter on demand.

Answers to the bill were filed by each of the defendants and replications to such answers. Grosse also filed a cross-bill making the appellee and Olsons defendants thereto, in which he set up the said contract, Olson's employment thereunder and said accounting, and said amount found due Olson, but claimed that under the terms of the contract he, Grosse, had the option to retain said amount in his business till the end of the contract between him and Olson, which

was three years; that Olson, without just cause, on April 4, 1897, left the employment of said Grosse, in violation of the terms of said contract, and entered the employ of one Backer, a competitor in business of said Grosse, whereby said Olson had greatly injured the trade and business of Grosse, and had caused him great loss of profits and gains to the sum of $5,000, and that said amount so found due Olson should be applied in liquidation of such damages as Grosse had sustained by reason of the violation of said contract.

Answers were filed to the cross-bill by each of the defendants thereto, and replications to such answers.

The cause was referred to a master to take proof and report the same with his conclusions, which was done. The master reported from the evidence taken before him the recovery of the judgment in appellee's favor, return of execution thereon, Olson's insolvency, his employment by Grosse under the said contract, the accounting between him and Grosse and the amount found due from Grosse to Olson, all substantially as above stated, and that on January 17, 1897, said account of $1,200 due from Grosse to Olson was transferred and assigned, by agreement between Olson and Grosse, to said Florence M. Olson for the consideration of one dollar; that said assignment was made for the purpose of hindering and delaying the creditors of Andrew Z. Olson; that no part of said $1,200 or interest thereon has ever been paid; that the assignment is conclusive as between the parties thereto and said Grosse; that Grosse is not entitled to any relief; that said assignment was and is a fraud on appellee, as a creditor of said Olson, and that appellee is entitled to have said $1,200, with interest thereon at six per cent per annum from January 17, 1897, applied toward the satisfaction of appellee's judgment.

Upon the hearing of exceptions to said report the chancellor overruled the exceptions, approved and confirmed the report and entered a decree in conformity therewith, and directing the payment by Grosse to appellee, within five

days, of the sum of $1,200, with interest from January 17, 1897, at six per cent per annum, amounting in all to $1,379.60, and also costs of suit, and the cross-bill of Grosse was also dismissed for want of equity. From this decree the appeal herein is taken.

ROGERS & MAHONEY and FREDERICK A. WILLOUGHBY, attorneys for appellant.

LOUIS DANZIGER, attorney for appellee, contended for the rule that, where parties are concerned in illegal transactions, courts of equity will not interpose to grant any relief, acting on the well known maxim, *In pari delicto portior est conditio defendentis.* As this court said in Kassing v. Durand, 41 Ill. App. 93, 106 :

" One of the most common occasions for the enforcement of the rule that he who comes into equity must do so with clean hands, arises in cases where a debtor has in any manner transferred his property for the purpose of defrauding his creditors, and afterward seeks as against the transferee to recover back the property. The door of a court of equity is always shut against such a claimant. Pomeroy's Eq. Jurisp., Sec. 401; Wheeler v. Sage, 1 Wall. 518; Bolt v. Rogers, 3 Paige 156; Riedle v. Mulhausen, 20 Ill. App. 68; Ryan v. Ryan, 97 Ill. 38; Fitzgerald v. Forristal, 48 Ill. 228; Phelps v. Curts, 80 Ill. 109; Nesbitt v. Digby, 13 Ill. 389."

See also, Miller v. Marckle, 21 Ill. 152; Dunaway v. Robertson, 95 Ill. 419.

The assignment was valid as between the parties to it—Olson, Grosse and Mrs. Olson—but void only as to Olson's creditors. Fitzgerald v. Forristal, *supra;* Upton v. Craig, 57 Ill. 257; Beebe v. Saulter, 87 Ill. 518.

MR. JUSTICE WINDES delivered the opinion of the court.

It is claimed for appellant that appellee stands in no better position as regards the $1,200 found to be due to Andrew Z. Olson from Grosse on the accounting between them than would Olson were he suing Grosse for the same; that the contract of employment was an entire contract, and

Olson having broken it, he could not recover as against Grosse, and that even if the contract were divisible, Grosse could set off or recoup the damages sustained by him by reason of Olson's violation of the terms of the contract. We are of opinion that these contentions can not be maintained on this record.

By the terms of the contract an accounting yearly is provided for between Grosse and Olson, and that the balance, if any, found to be due to Olson at the end of the year should be allowed to remain in the business, at the option of Grosse, in which event interest at the rate of six per cent should be allowed upon such amount. The master and the court found, and the evidence supports the finding, at least the finding can not be said to be manifestly against the evidence, that the amount found to be due Olson upon the accounting was, by agreement between him and Grosse, assigned and transferred to Florence M. Olson, for the purpose of hindering and delaying the creditors of Andrew Z. Olson, and that this assignment was and is a fraud upon appellee as a creditor of said Olson.

As between the Olsons and Grosse this assignment was valid and binding, although void as to creditors of Olson who were creditors at the time of such assignment. Upton v. Craig, 57 Ill. 257; Phelps v. Curts, 80 Ill. 109; Fitzgerald v. Forristal, 48 Ill. 228; Beebe v. Saulter, 87 Ill. 518; Campbell v. Whitson, 68 Ill. 240; Songer v. Partridge, 107 Ill. 529.

In the Upton case, *supra*, the Supreme Court, in speaking of a fraudulent conveyance, say: " It was settled by a long course of decisions in this country and in Great Britain, that however fraudulent the deed may be as to creditors it is valid and binding between the parties."

In the Phelps case, *supra*, it was held that where a deed was set aside as fraudulent, it would be upheld as to the grantee who was not guilty of actual fraud, to the extent of the actual consideration which passed from such grantee.

In the Campbell case, *supra*, the court say :

" It is well settled and familiar doctrine, that, although

voluntary conveyances are or may be void as to existing creditors, yet they are valid and effectual as between the parties, and can not be set aside by the grantor if he should become dissatisfied with the transaction; the law regards it as his own folly to have made such a conveyance, and leaves him to bear the consequences without means of redress. * * * A conveyance of this sort is void only as against creditors, and then only to the extent in which it may be necessary to deal with the conveyed estate for their satisfaction. To this extent, and to this only, it is treated as if it had not been made. To every other purpose it is good. Satisfy the creditors and the conveyance stands." (Citing cases.)

The assignment of the claim of Olson against Grosse to Florence H. Olson was a voluntary act on the part of Olson, to which Grosse gave his assent and agreed to pay the amount of the claim to Mrs. Olson for the purpose of enabling Olson to hinder and delay his creditors. Grosse, having undertaken to pay the $1,200 to Mrs. Olson on demand, thereby waived all his rights under the contract to retain the money until the end of the contract between him and Olson. This agreement, under the authorities cited, was binding upon him, but because the transaction was a fraud as to the then creditors of Olson, as to such creditors it was not binding, and for this reason we think the authorities cited by appellant which go to sustain the general proposition that assets of a debtor can not be reached by creditor's bill where the debtor himself is not in a position to recover the same by suit, are not applicable.

We think it clear that the arrangement between the Olsons and Grosse had the effect of modifying the contract between Olson and Grosse to the extent stated, that is, that Grosse waived any right which he had under the terms of the contract to retain the amount found due to Olson until the end of the contract, and therefore waived, as to this amount, any right which he had to set off or recoup any damages which he may have suffered by reason of any alleged violation subsequently by Olson of the terms of the contract.

But even if it could be held that Grosse had any such

Grosse v. Sweet, Dempster & Co.

right of set-off and re-coupment, we can not say, after a care ful consideration of the evidence in this record, that it shows there has been any violation by Olson of the contract. There is a conflict in the evidence in this respect, and while neither the master nor the chancellor has made any specific finding on the question, the cross-bill is dismissed for want of equity, and we can not say that for this reason it was not proper to dismiss the cross-bill. Moreover, the proof as to damages claimed to have been sustained by Grosse is so uncertain and indefinite in its nature as to have justified the chancellor in finding that it was insufficient to justify any relief on the cross-bill by way of set-off or recoupment.

The claim is made that the suit by appellee was prematurely brought, for the reason that Grosse was entitled to keep the $1,200 in his business during the term of the contract, which did not expire for nearly eighteen months after the filing of the bill. We are of opinion that this point is not well taken, because Grosse only had the option to retain this money to the end of the contract if he saw fit to exercise it. This, as we have seen, he failed to do, but undertook to pay the money to Mrs. Olson and thereby waived his option.

The decree of the Circuit Court is therefore affirmed.