FRANCES H. BOARDMAN *et al.* Appellants, *vs.* WILLIAM
BUBERT *et al.* Appellees.

*Opinion filed February 16, 1927—Rehearing denied April 7, 1927.*

1. SPECIFIC PERFORMANCE—*waiver of provision as to time of
payments is not a waiver of all time provisions.* Where the consideration for property is to be paid in partial payments at definite times fixed by the contract and the parties have treated the time clause as waived with respect to some of the payments, the vendor, to avail himself of the right to forfeiture for failure to make subsequent payments on time, must give reasonable, definite and specific notice of his changed intention, but a waiver of the time element of one provision of a contract is not a waiver of all its time specifications.

2. SAME—*effect of waiver or modification depends on intention—burden of proof.* The extent to which a contract is modified by a waiver or supplemental agreement depends on the nature of the change and the intention of the parties, and where one of the parties contends that the contract has been modified the burden is on him to prove his claim, as the contract, unless modified by the parties, must stand as it was written.

3. SAME—*when conduct of parties is not waiver of time provision—rescission.* Although vendors fail to cure objections to title within the time required by the contract and the vendees do not then elect to take the title as it stands but both parties recognize the contract as still in force notwithstanding its provision that it shall be null and void in such case, such conduct of the parties is not a waiver of a provision requiring payment to be made within five days after the title is accepted, and where the vendees afterwards give notice that they will take the title but fail to pay the money within five days their rights under the contract are terminated, and no notice of rescission of the contract by the vendors is necessary.

4. SAME—*when delay of vendees deprives them of right to specific performance.* Regardless of the question whether the conduct of the parties in treating a contract as still in force after failure to cure objections to the title in the required time is also a waiver of a further provision requiring the vendees to make payment within five days after the title is accepted, the vendees will not be entitled to specific performance where they delay tendering the required payment and closing the deal for two months after they approve the title, land values in the meantime having rapidly increased, as in such case they do not show equitable grounds for relief.

APPEAL from the Circuit Court of Lake county; the Hon. CLAIRE C. EDWARDS, Judge, presiding.

WYMAN, HOPKINS, McKEEVER & COLBERT, (AUSTIN L. WYMAN, of counsel,) for appellants.

EDWIN D. LAWLOR, for appellees.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

This appeal is prosecuted to review a decree of the circuit court of Lake county dismissing for want of equity appellants' bill, which asked for a decree against appellees directing them to specifically perform a contract to convey to appellants a 33-acre tract of land near Deerfield.

The agreement was in the usual form and was signed December 21, 1923. Gilbert D. Johnson & Bro., real estate brokers, represented both parties to the agreement and held the $500 earnest money paid by appellants to bind the bargain. Appellants agreed to pay $11,000 for the land, the second payment of $3500 to be made within five days after the title had been examined and found satisfactory. The contract provides for a guaranty policy, and application was made for its issuance. A letter of opinion preliminary to the issuance of the policy was furnished by the Chicago Title and Trust Company on February 1, 1924, and disclosed many objections to the title. Robert L. Johnson, who was the active broker in this deal, undertook to meet these objections. The contract provided that if the objections were not cured within sixty days the contract should be null and void unless the purchasers elected to accept the title notwithstanding the objections. The objections were not cured within sixty days nor did the purchasers elect to take the title as it was. Johnson continued his efforts to perfect the title and by the middle of July had either cured the defects or secured a waiver of them

by the Chicago Title and Trust Company. Appellees pro-
tested about the delay from time to time but continued to
recognize that the contract was in force. When Johnson
notified appellees on July 15 that appellants were satisfied
with the title he told them the appellants would need two
or three weeks in which to secure the $3500, which they
planned to borrow from the New York Life Insurance
Company. William Bubert testified that when Johnson
asked for time to get the money with which to make the
payment he told Johnson he had waited then longer than he
should and that he wanted his money at once; that John-
son told him that the contract gave appellants five days
within which to get the money, and that he replied that if
the contract did give them five days he would give them
no more. Johnson's version of this conversation is that
Bubert said he wanted the deal closed "as quickly as pos-
sible," "right away," "at once," but that he never said he
would insist upon the five-day limitation fixed by the con-
tract. Bubert heard nothing further about the matter for
about six weeks. About the first of August he sold some
trees to the forest preserve district. Near the first of
September Johnson called Bubert on the telephone and said
appellants had the money with which to close the deal. Bu-
bert says he replied that there was no contract in existence,
that appellants had not carried out their agreement, and
that the deal was off as far as he was concerned. Johnson
says that Bubert told him about selling the trees but did
not say the contract was no longer in existence. Septem-
ber 15 Johnson tendered Bubert appellants' check for $3500,
but Bubert refused to accept it.

Time was made the essence of the contract, but appel-
lants contend that because appellees recognized the con-
tract as being in existence after appellants failed to take
the title, notwithstanding the legal objections to it, when
the 60-day period for curing defects expired, they likewise
waived the provision of the contract requiring the payment

of $3500 to be made within five days after the title was approved. Where the consideration is to be paid in partial payments at definite times fixed by the contract and the parties have treated the time clause as waived with respect to some of the payments, the vendor cannot suddenly insist upon a forfeiture because of failure to make subsequent payments on time, but in order to avail himself of it he must give reasonable, definite and specific notice of his changed intention. (*Fox* v. *Grange,* 261 Ill. 116; *Smith* v. *Treat,* 234 id. 552; *Eaton* v. *Schneider,* 185 id. 508; *Watson* v. *White,* 152 id. 364.) This is true because it would be inequitable to permit the vendor to lull the vendee into a feeling of security by acquiescing in his failure to meet some of the payments at the time fixed by the contract and then suddenly insist on a literal compliance with the contract without notice of his changed intention. This does not mean, however, that the waiver of the time element of one provision of a contract effects a waiver of all its time specifications. (*Drown* v. *Ingels,* 3 Wash. St. 424, 28 Pac. 759.) The extent to which a contract is modified by a waiver or supplemental agreement depends on the nature of the change and the intention of the parties. Where one of the parties contends that the contract has been modified the burden is on him to prove his claim. In this case Johnson, who was representing appellants in closing the deal, admits that July 15. Bubert told him the deal must be closed at once and admits that the five-day limitation in the contract was discussed. Bubert says he complained of the delay and demanded that the $3500 be paid at once, and that when Johnson called his attention to the five-day period allowed by the contract he said no more time than five days would be granted. There is nothing in this conversation nor in the conduct of the parties which indicates a waiver of the provision of the contract which required the $3500 to be paid within five days after the title had been approved. The contract did not fix a definite time when this

money was to be paid, but it fixed a measure of time by which the time of payment could be ascertained from the day appellants approved the title. By approving the title July 15 appellants brought into effect the provision of the contract which fixed the last day for making the payment as July 20. Except in so far as the contract was modified by the parties it stands as it was written. (*Davis* v. *Commonwealth,* 164 Mass. 241, 41 N. E. 292; *Grace Contracting Co.* v. *Norfolk and Western Railway Co.* 259 Pa. 241, 102 Atl. 956; *Newhall Land and Farming Co.* v. *Burns,* 31 Cal. App. 549, 161 Pac. 14.) This principle was applied in the decisions in *Grosse* v. *Sweet, Dempster & Co.* 188 Ill. 555, and *Cooke* v. *Murphy,* 70 id. 96. Under the terms of the agreement the rights of the vendees ended when the money was not paid within five days after the title had been approved, and no notice of the rescission of the contract by the vendors was necessary. *Glock* v. *Howard & Wilson Colony Co.* 123 Cal. 1, 55 Pac. 713.

When the vendee seeks a decree of specific performance he must show equitable grounds for relief before he is entitled to his decree. In this case appellants delayed closing the deal for two months after they approved the title. Land values were increasing rapidly in this section. Equity will not compel specific performance arbitrarily, and if time had not been made the essence of the contract appellants would not have been entitled to a decree. Whatever may be said of the effect of the acquiescence of the parties in the delay with respect to curing the defects in the title, the vendees were obliged to perform within a reasonable time after the defects were cured, and having failed in this respect are not entitled to a decree. *Carroll* v. *Munday & Scott,* 185 Iowa, 527, 4 A. L. R. 811, and annotation at 815.

The decree of the circuit court is affirmed.

*Decree affirmed.*