### Kravitz v. Grimm.

(Decided March 25, 1938.)

J. EDWARD BOLTZ and E. E. McLEFRESH for appellant.

DANIEL W. DAVIES and HARDESTY & MELVILLE for appellee.

OPINION OF THE COURT BY JUDGE BAIRD—Affirming.

Reuben Kravitz, on the 24th day of October, 1928, entered into a written contract with George G. Grimm, by the terms of which he agreed to pay Grimm $8,500 for a part of lot No. 1, McCracken subdivision, and a driveway along the southerly side of Harry A. Wadsworth's property, a part of Tower Place subdivision, in Fort Thomas, Campbell county, Ky., to be paid in installments of $90 on the ——— day of each month, with the provision that the interest on the principal should be taken out when each installment was paid, the remainder to be applied as a credit on the principal until it was reduced to a sum as might be paid off by a loan in some building association. At that time a final settlement was to be made and then Grimm was to execute to Kravitz a deed. Kravitz was to take possession of the property at the time the contract was entered into and was to keep it in reasonably good repair, and to pay all charges incident to the use of the property, including water, electricity, gas, taxes, street, sidewalk, and other assessments, and to keep the premises amply insured against tornado and fire. In the event he failed to do so, or to pay the monthly installments within ten days after the due date, the contract was to become null and void, and Grimm was given the right without demand or notice to re-enter and repossess the premises. All the money that Kravitz had paid to him up to that time was to be considered as rent for the use, occupation, and as damages for the breach of the contract. Kravitz under and by virtue of that contract, on the 24th day of October, 1928, took possession of the premises, but later failed to pay the monthly installments or to carry out the other provisions of the contract.

On the 26th day of May, 1936, Kravitz instituted this action in equity in the Campbell circuit court. He alleged in his petition that he took possession of the premises by virtue of the written contract and paid the monthly installments of $90, out of which the interest was deducted to the 24th day of May, 1936, amounting to $4,791.65, which was paid on the principal. He also alleged that he paid all taxes and insurance up to that date. He further alleged that Grimm sued out a writ of forcible detainer against him seeking to oust him of the possession, which was tried and decided in his favor, and that he has again instituted another proceeding of the same kind for the purpose of dispossessing

him from the premises; that these proceedings are without right and a breach of the contract and done for the purpose of depriving him of his rights to the property. He sought judgment against Grimm for $4,791.65, and asked that it be adjudged a lien on the land and his lien enforced and the property sold to satisfy his debt.

A number of preliminary motions were made by appellee to appellant's petition, which we deem not necessary to consider. All material allegations of the petition were denied by Grimm and, in addition, he affirmatively pleaded that Kravitz paid his installments under the contract until the year 1930, but failed to make any further payments for the years 1930, 1931, and 1932, or at all, and failed to keep the property in reasonably good repair or to pay any charges for the use of the property or to pay the taxes, street assessments, and other costs of maintaining the property; that as a result of his failure to pay the installments as he agreed, on or about the 1st day of January, 1934, he agreed to, and did, rescind, cancel, and nullify the contract for the purchase of the land; that since that time he has occupied a small part of the premises, to wit, a store room, as his tenant from month to month, paying and agreeing to pay on account of the rental therefor $15 a month.

The record does not reveal that Kravitz denied the affirmative allegations of Grimm's answer. On motion of Kravitz the case was referred to the master commissioner with directions to take and hear proof and ascertain and report the amount paid by Kravitz under his contract of purchase. Proof was taken by depositions. The report of the commissioner was filed showing the amounts paid by Kravitz under the contract to be $2,233.95. The action was then submitted for judgment on the whole case, including the exceptions of Kravitz, to the report of the commissioner. On consideration thereof, the court dismissed Kravitz' action. He complains of that judgment and his appeal follows.

It will be noted that this action is instituted and prosecuted by the vendee Kravitz, or, as he might be denominated under the proof, the tenant of Grimm, in an endeavor by his action to obtain a judgment for the money paid by him to the vendor, Grimm, under his contract of purchase of the premises, described in the written contract. He admits his failure to fulfill his contract; also admits that he has been in the possession

of the property since October 24, 1928, when the written contract of purchase was entered into. In addition to a personal judgment, he seeks a lien upon the land for which he agreed to buy and pay for, and for an injunction enjoining appellee, Grimm, from interfering with his possession by proceeding against him by a writ of forcible detainer.

Under the written contract and the facts developed in the case, and under the law, is he entitled to any such relief? We think not. It is difficult to ascertain precisely from the allegations of his petition on what equitable grounds he bases his cause of action. His action is instituted in equity. By the prayer of his petition he seeks a personal judgment of $4,791.65, and a lien on the land he purchased to secure its payment; also, an injunction enjoining appellee from instituting further proceedings of forcible detainer against him until his rights are ascertained in this action.

We must keep in mind that he, as vendee, under the written contract of purchase of the land, has instituted this action in equity, which can only be done when the vendor has failed to perform his part of the written contract. When there is such a failure, then the vendee in choosing his remedy must either affirm or disaffirm or rescind the contract. If he affirms the contract, he may then bring an action in equity for the specific performance of the contract or he may sue the vendor at law for damages.

In 66 C. J. 1487 the rule is stated that:

"In order to a rescission of a contract of sale and purchase of real estate, so that the purchaser may recover back purchase money as money had and received to his use, the latter must not only not be in default himself, but he must show an entire breach on the part of the seller; in other words, he must be in such position in respect to performance on his part, and non-performance on the part of the vendor, that he can affirm the contract and maintain an action upon it against the vendor; or disaffirm it, and maintain an action for money had and received to his use." Eames v. Germania Turn Verein, 8 Ill. App. 663, 673.

The facts in the instant case do not come up to that sound rule. Kravitz admits the execution of the written

contract, and that he was in arrears in making the monthly payments, and that he failed to pay the taxes and insurance, as provided by the written contract of purchase. The contract provides that Grimm has the right to re-enter and repossess all the premises on Kravitz' failure or breach of his part of the contract; all of which admitted breach was prior to the time Grimm took steps to gain possession of his premises. Kravitz, in substance, further admits in his testimony that he has been behind with his payments for three and one-half years or more; the proof is conclusive in that respect. He is holding possession of the premises under the contract of purchase, paying nothing for its use, and at the same time asking a recovery of Grimm for the total amounts paid on the original contract price.

The chancellor, as appears from his written opinion, which is made a part of the record, reaches the following conclusion:

"This is a suit for damages for a breach of the contract and for the plaintiff to succeed he must establish the terms of the contract (which are admitted), his willingness, readiness, ability and offer to comply with it, the defendant's breach, and then he must show that he was unavoidably damaged thereby, all of which he has failed to establish according to the record herein.

"The court knows of no principle of law or equity, nor has the plaintiff cited any such, that would give plaintiff any standing in a court of justice, under the circumstances as shown by the record, and especially plaintiff's own testimony in this case."

We have been unable to reach a different opinion.

In the case of Ward Real Estate et al. v. Childers, 223 Ky. 302, 3 S. W. (2d) 601, 602, where the question involved was similar and analogous to the one we have here, we said, in substance, that where a contract of sale of land has been entered into and the purchaser has paid a part of the purchase price, that the purchaser could not recover that money from the vendor, if he failed or refused to perform his part of the contract, if the vendor complied fully with his part of the same contract. The facts in that case were hardly as strong as the one under consideration. The facts in that case

were in brief that on February 3, 1925, Scott Childers entered into a written contract with H. C. Dodd, through his real estate agent, Ward, by the terms of which Dodd was to sell and convey to Childers a certain farm in Fayette county, Ky., for which Childers agreed to pay him $4,500. Possession was to be given on March 1, 1925. Nothing was said about when the deed was to be made. At the time of the execution of the contract, Childers paid $450 in cash, which was to be a part of the purchase price for the land. The question was raised as to the title of Dodd to the land. The title to the land was ascertained to be in Dodd's wife. Although Dodd tendered to Childers a perfect title, signed by his wife and himself, Childers refused to accept the deed and sued for the $450 he had paid. The question came up in that case as to whether or not, if a deed tendered by Dodd was sufficient to vest a good and perfect title, that he was bound to take it, provided the deed was tendered within a reasonable time after the contract had been entered into. The question arose that if Childers then had failed or refused to perform his part of the contract, could Dodd have retained the money that had already been paid to him? In that case, we said that the precise question had never been decided by this court, so far as we have been able to determine, but it was mentioned and discussed in the case of Johnston v. Benjamin, 219 Ky. 169, 292 S. W. 801. In that case, we said that it is a rule supported by the great weight of authority that a party to an agreement to purchase property, who had advanced money in part performance of the agreement and then refuses to proceed to the ultimate conclusion of the agreement, the other party being ready and willing to perform his part of the contract, is not entitled to recover his part of the money so advanced.

We also said:

"The reason for the rule is that a party to a contract cannot breach it and, being in default, thereby secure for himself some right or advantage to the detriment of the other party, who is not in any default. To permit a recovery by the party in default would be to allow one who has breached his contract to recover under that contract despite such breach, and the innocence of his adversary. In L. R. A. 1918B, p. 540, may be found a collection of authorities bearing on this proposition. We regard

the rule as sound and adhere to it. In the Benjamin Case, supra, we held, in substance, that, in order to retain the earnest money, the vendor must not himself be in default, and he must either show that he tendered performance or that performance on his part was waived by the vendee.''

In the instant case, it is provided in the written contract made a part of appellant's petition that he was to pay at the rate of $90 a month until the amount paid by him would reach an amount that the remainder could be obtained by some building association; then, and not until then, was Grimm, the vendor, to make and execute a deed. There is no evidence nor allegation in the petition that Grimm ever failed or refused to accept the $90 or the additional pay that appellant agreed to make until a building association would furnish the remainder of the money. Nourse v. Azvedo, 1921, 185 Cal. 47, 195 P. 669; Hansbrough v. Peck, 1866, 5 Wall. 497, 18 L. Ed. 520; Ketchum v. Evertson, 1816, 13 Johns., N. Y., 359, 7 Am. Dec. 384; Rounds v. Baxter, 1827, 4 Me. 454, 4 Greenl. 454.

Applying the principle above stated, we find in the case of Ward Real Estate et al. v. Childers, supra, the judgment must be affirmed.

It is further insisted that the court erred in overruling exceptions to the depositions of Grimm because it is claimed that the depositions were taken in violation of section 606, subsec. 3, Civil Code of Practice. The record shows that the first deposition of Grimm was taken on the 23d day of October, 1936, and that another deposition was taken on the 17th day of February, 1937, and that the depositions of the remaining witnesses offered by appellee were taken January 11, 1937. It may be accepted that the deposition of Grimm, taken February 17, 1937, was incompetent unless taken on rebuttal, which we do not decide. However, if the second deposition of Grimm be incompetent, and for that cause not considered at all, the fact remains that appellant having admitted the execution of the contract and the terms thereof, and that he has had possession under it, all the while, and has failed to pay the installments when due, as the contract provided, and the contract further providing that on his failure, that appellee could re-enter and repossess himself of the property, and the further admission that the writ of forcible de-

tainer was not sued out at all, until after his (Kravitz') breach of the contract, the reading of the deposition could not affect the result because it would not be prejudicial to the substantial rights of appellant. Sections 338 and 756, Civil Code of Practice.

Wherefore, the judgment is affirmed. Whole court sitting.