**Jean SEBASTIAN, Movant,**

v.

**Perl FLOYD and Zona Floyd, Respondents.**

Supreme Court of Kentucky.

July 3, 1979.

Michael O'Hara, Northern Kentucky Legal Aid Society, Inc., Covington, for movant.

Clyde Middleton, Covington, for respondents.

AKER, Justice.

This case presents the question whether a clause in an installment land sale contract providing for forfeiture of the buyer's payments upon the buyer's default may be enforced by the seller.

The movant, Jean Sebastian, contracted on November 8, 1974, to buy a house and lot situated in Covington, Kentucky, from Perl and Zona Floyd, respondents in this motion for review. Sebastian paid $3,800.00 down and was to pay the balance of the $10,900.00 purchase price, plus taxes, insurance, and interest at the rate of 8½% per annum, in monthly installments of $120.00. A forfeiture clause in the contract provided that if Sebastian failed to make any monthly payment and remained in default for 60 days, the Floyds could terminate the contract and retain all payments previously made as rent and liquidated damages.

During the next 21 months, Sebastian missed seven installments. Including her down payment, she paid the Floyds a total of $5,480.00, rather than the $6,320.00 which was called for by the terms of the contract. Of this amount, $4,300.00, or nearly 40% of the contract price, had been applied against the principal.

The Floyds brought suit in the Kenton Circuit Court against Sebastian in August, 1976, seeking a judgment of $700.00 plus compensation for payments for taxes and insurance, and seeking enforcement of the forfeiture clause. Sebastian admitted by her answer that she was in default but asked the court not to enforce the forfeiture clause. Sebastian counterclaimed for all payments made pursuant to the contract. On advice of counsel, Sebastian ceased to make payments after the institution of this law suit.

The case was referred to a master commissioner for hearing. The commissioner recommended termination of the land sale contract and enforcement of the forfeiture clause. The Kenton Circuit Court entered a judgment adopting the commissioner's recommendations. On appeal, the Court of Appeals affirmed. We granted discretionary review to consider the validity of the forfeiture clause. We reverse.

When a typical installment land contract is used as the means of financing the purchase of property, legal title to the property remains in the seller until the buyer has paid the entire contract price or some agreed-upon portion thereof, at which time the seller tenders a deed to the buyer. However, equitable title passes to the buyer when the contract is entered. The seller holds nothing but the bare legal title, as security for the payment of the purchase price. *Henkenberns v. Hauck*, 314 Ky. 631, 236 S.W.2d 703 (1951).

■ There is no practical distinction between the land sale contract and a purchase money mortgage, in which the seller conveys legal title to the buyer but retains a lien on the property to secure payment. The significant feature of each device is the seller's financing the buyer's purchase of the property, using the property as collateral for the loan.

Where the purchaser of property has given a mortgage and subsequently defaults on his payments, his entire interest in the property is not forfeited. The mortgagor has the right to redeem the property by paying the full debt plus interest and expenses incurred by the creditor due to default. In order to cut off the mortgagor's right to redeem, the mortgagee must request a court to sell the property at public auction. See Lewis, Reeves, How the Doctrine of Equitable Conversion Affects Land Sale Contract Forfeitures, 3 Real Estate Law Journal 249, 253 (1974). See also KRS 426.005, 426.525. From the proceeds of the sale, the mortgagee recovers the amount owed him on the mortgage, as well as the expenses of bringing suit; the mortgagor is entitled to the balance, if any.

■ The modern trend is for courts to treat land sale contracts as analogous to conventional mortgages, thus requiring a seller to seek a judicial sale of the property upon the buyer's default. It was stated in *Skendzel v. Marshall*, 261 Ind. 226, 301 N.E.2d 641, 648 (1973):

> "A conditional land contract in effect creates a vendor's lien in the property to secure the unpaid balance owed under the contract. This lien is closely analogous to a mortgage—in fact, the vendor is commonly referred to as an 'equitable mortgagee.' . . . In view of this characterization of the vendor as a lienholder, it is only logical that such a lien be enforced through foreclosure proceedings."

See also *H & L Land Company, Inc. v. Warner*, Fla.App., 258 So.2d 293 (1972). We are of the opinion that a rule treating the seller's interest as a lien will best protect the interests of both buyer and seller. Ordinarily, the seller will receive the balance due on the contract, plus expenses, thus fulfilling the expectations he had when he agreed to sell his land. In addition, the buyer's equity in the property will be protected.

This holding comports with our decision in *Real Estate and Mortgage Co. of Louisville v. Duke*, 251 Ky. 385, 65 S.W.2d 81 (1933), wherein it was stated at page 82 of 65 S.W.2d:

> "The forfeiture clause was intended simply as a security for the payment of the purchase price. In these circumstances the forfeiture provided for by the contract will be disregarded . . . .."

Respondents contend the preponderance of Kentucky cases permits enforcement of forfeiture clauses in land sale contracts. However, installment land contracts were not involved in two of the cases cited in respondents' brief. In *Ward Real Estate v. Childers*, 223 Ky. 302, 3 S.W.2d 601 (1928), and *Graves v. Winer*, Ky., 351 S.W.2d 193 (1961), this court permitted retention by the sellers of "earnest money" deposited pursuant to an executory deposit receipt agreement. The ordinary short-term real estate contract presents a situation very different from the case at bar. Such an agreement generally provides that in the event the buyer fails to perform the contract, the seller may retain the down payment (usually no more than ten per cent of the contract price) as liquidated damages. In *Ward*, supra, and *Graves*, supra, the sum specified as liquidated damages clearly bore a reasonable relation to the actual damages suffered by the seller, which damages would be difficult to ascertain. *Robert F. Simmons and Associates v. Urban Renewal and Community Development Agency of Louisville*, Ky., 497 S.W.2d 705 (1973). Our holding therefore has no bearing on the typical earnest money deposit.

Respondents also cite *Maschinot v. Moore*, 275 Ky. 36, 120 S.W.2d 750 (1938). Their reliance on that case is misplaced, however, because there the court dealt with the question whether the vendor could maintain an action in ejectment against the vendee under a land sale contract; the court did not

address the issue of the enforceability of a forfeiture clause such as that in the instant case.

In *Miles v. Proffitt*, Ky., 266 S.W.2d 333 (1954), we held that a party to an installment land sale contract who had advanced money in part performance and then failed to make further payments was not entitled to recover any of the money so advanced. The court relied on *Kravitz v. Grimm*, 273 Ky. 18, 115 S.W.2d 368 (1938), as authority for its holding in Miles. To the extent *Miles* and *Kravitz* uphold the validity of forfeiture clauses in installment land sale contracts, they are overruled. The seller's remedy for breach of the contract is to obtain a judicial sale of the property.

The judgment of the trial court and the opinion of the Court of Appeals are reversed and the case remanded for further proceedings consistent with this opinion.

All concur except STERNBERG, J., who did not sit.